[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14131
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20138-CMA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FRANKIE JERMAINE ANDERSON,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 1, 2017)

Before HULL, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

Defendant Frankie Anderson appeals his convictions on the grounds that he lacked the mental competence to enter a guilty plea at the time of his April 2, 2013 plea hearing. Anderson suffers from schizophrenia and now contends that the district court should have sua sponte ordered a competency hearing to evaluate his competency to enter a guilty plea. The government responds that Anderson's appeal is untimely and that the district court did not err by accepting Anderson's guilty plea. After thorough review, we affirm.

## I.    BACKGROUND

### A.    Criminal Information and Plea Agreement

On March 7, 2013, a criminal information charged Anderson with (1) conspiring to defraud the United States by knowingly receiving, concealing, and retaining over $1,000 in federal tax refund checks, knowing that the checks had been embezzled, stolen, purloined, and converted, in violation of 18 U.S.C. § 371, (Count One) and (2) theft of government property, in violation of 18 U.S.C. § 641 (Count Two). Specifically, the information stated that Anderson brought thousands of fraudulently obtained tax refund checks in other people's names to his co-conspirator's check cashing store. From February 2012 through June 2012, Anderson knowingly and fraudulently cashed more than seven million dollars in tax refund checks.

2

On April 2, 2013, Anderson pled guilty to both counts.  In the plea agreement, Anderson agreed to fully cooperate with the government by providing information, testifying if needed, and working in an undercover role.  The government reserved the right to, in its sole discretion, review Anderson's cooperation and make a motion for a sentence reduction under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e).

In connection with the plea agreement, Anderson admitted in a written factual proffer that he cashed thousands of fraudulently obtained tax refund checks in amounts totaling over seven million dollars.  Anderson received approximately 20% of the face value of the checks and used the money to buy real property and multiple luxury cars.

## B.    Plea Hearing

On April 2, 2013, the district court held a plea hearing.  At the plea hearing, the district court asked Anderson a series of questions before accepting Anderson's guilty plea.  The district court instructed Anderson to say something if he did not understand a question and told Anderson that he would be allowed to speak to his attorney off the record should he so desire.

The district court asked Anderson if he had "ever been treated for a mental illness or an addiction to narcotic drugs."  Anderson replied: "Yes."  Anderson had been treated for schizophrenia.  The district court asked Anderson if he was taking

3

any medication, what it was, and how often he took it.  Anderson admitted that he was taking medication daily but did not remember the name of it.

The district court then asked Anderson: "Does that medication affect your ability to make decisions and control your own conduct?"  Anderson responded: "No."  The district court followed up, asking: "Are you understanding everything that's happening here this morning?"   Anderson answered: "Yes."

The district court continued to follow up, asking: "Do you believe that you have any mental or physical condition or illness that prevents you from understanding what's happening here in court this morning?"  Anderson again answered: "No."  The district court similarly queried Anderson's counsel about Anderson's mental competence: "[I]n your opinion, is your client competent to enter a guilty plea?"  Anderson's counsel responded: "Yes, Your Honor."

The district court then confirmed with Anderson that Anderson had received the criminal information and discussed the charges and the case with his attorney. Anderson told the district court that he understood the charges against him. Anderson's counsel informed the district court that Anderson "is fully aware of the consequences of his guilty plea and the deal" offered by the government, had reviewed the charges, and had signed his confession.  Anderson agreed with his counsel's statement.  Anderson also stated that he had the opportunity to read the plea agreement and to discuss it "fully" with his attorney.

4

The district court then went over the plea agreement with Anderson. Anderson repeatedly assured the district court that he understood what was happening, that he had no questions or concerns, and that he agreed with the district court's description of the plea agreement. Anderson specifically agreed that the plea agreement made "no promises" with regard to a sentence. Anderson also indicated that he understood and agreed that the government reserved the right to evaluate his cooperation and had "sole discretion" to file a motion requesting a sentenced reduction, which the district court would have no obligation to grant.

The district court similarly reviewed the consequences of pleading guilty with Anderson. Anderson stated that he understood the consequences. Anderson again admitted to the stipulated facts in the factual proffer. Specifically, Anderson conceded that the government could prove beyond a reasonable doubt that (1) from February 2012 through June 2012, he knowingly brought fraudulently obtained income tax refund checks totaling over seven million dollars to the check cashier; (2) he received approximately 20% of the face value of the checks; and (3) on November 28, 2012, he possessed 35 tax refund checks worth over one hundred thousand dollars in the names of other people and obtained by fraud that he intended to convert for his own benefit.

The district court found Anderson competent and capable of entering a guilty plea, stating:

5

It is the finding of the Court that the Defendant Frankie Jermaine Anderson is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of his plea based upon his conversations with his attorney and the colloquy before the Court, that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses and that the agreement presented to the Court was voluntarily entered into and is not the result of force, threats or coercion. I also find the Defendant has entered his plea with the advice and the assistance of the effective and competent counsel.

The district court thus accepted Anderson's guilty plea for Counts One and Two. After the plea hearing, Anderson remained out of prison on bond but wore an electronic monitoring bracelet.

## C.    Presentence Report

The Presentence Investigation Report ("PSI") calculated Anderson's total offense level as 29 and assigned Anderson a criminal history category of III. The PSI thus calculated an advisory guidelines range of imprisonment of 108 to 135 months. The PSI also noted that Count One had a term of imprisonment of zero to five years and that Count Two had a term of imprisonment of zero to ten years.

The PSI also discussed Anderson's mental health. According to the PSI, Anderson, who was born in 1972, reportedly began hearing voices and feeling anxious at the age of 20. In 2003, Anderson was diagnosed with schizophrenia and prescribed an anti-psychotic drug, risperidone.

6

On March 26, 2013, a doctor evaluated Anderson at the request of the probation office.  The doctor diagnosed Anderson with schizophrenia, chronic paranoid type, and anxiety disorder.  The doctor recommended that Anderson attend monthly psychiatric medication management sessions, and Anderson attended his first such therapy session on April 24, 2013.

Anderson admitted to self-medicating with alcohol, marijuana, cocaine, and Xanax to control his anxiety and admitted that he could benefit from a substance abuse treatment program.

Neither Anderson nor the government filed any objections to the PSI.

**D.     Sentence**

On June 10, 2013, the district court entered its judgment and sentenced Anderson to statutory maximum prison terms of 120 months, consisting of 60 months as to Count One and 120 months as to Count Two, served concurrently. The district court ordered restitution in the amount of $9,292,228.40.

At the sentencing hearing, the district court informed Anderson that he had 14 days to file a notice of appeal following the entry of the judgment.

**E.     Motion for Specific Performance of the Plea Agreement**

On June 24, 2014, Anderson filed a <u>pro se</u> motion for "specific performance" of his plea agreement, requesting that the district court compel the government to acquiesce to a sentence reduction for Anderson under U.S.S.G.

§ 5K1.1.  Anderson claimed that he had provided more than substantial assistance to the government by performing controlled buys and obtaining recorded conversations of certain conspirators.  Anderson also claimed that the government put him and his wife in danger by releasing to the press that someone was informing on those conspirators.

On July 14, 2014, the district court denied Anderson's motion.  The district court found that the government had sufficient, legitimate reasons for not filing a motion for sentence reduction and that Anderson had not shown any improper motive by the government.

**F.    Appeal**

On August 30, 2015, Anderson, proceeding pro se, filed a notice of appeal of the judgment against him.[1]  Anderson appealed his convictions and sentences and claimed that his poor mental health prevented him from understanding what was going on when he pled guilty.

This Court appointed the federal public defender to represent Anderson in his appeal.

---

[1]Under the prison mailbox rule, "a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Daniels v. United States, 809 F.3d 588, 589 (11th Cir. 2015) (per curiam) (quoting Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009)), cert. denied, 137 S. Ct. 40 (2016).  Anderson signed his notice of appeal on August 30, 2015 and without evidence to the contrary we assume that is when Anderson delivered it to the prison authorities. Id.

8

On appeal, Anderson argued first that the district court should have sua sponte ordered a competency hearing in lieu of accepting his guilty plea and, second, that his sentence was substantively unreasonable.  The government filed a motion to dismiss Anderson's appeal due to an appeal waiver in Anderson's plea agreement.

This Court granted the government's motion to dismiss as to Anderson's claim that his sentence was unreasonable.  United States v. Anderson, No. 15-14131-CC at 3-4 (11th Cir. Jan. 19, 2017) (per curiam).  This Court, however, denied the government's motion as to Anderson's claim about his competency, concluding that the terms of the waiver applied only to sentencing issues and did not extend to his competency to plead guilty in the first place.  Id. at 4.  We are thus left with only the competency issue in this appeal.

## II.  DISCUSSION

### A.    Timeliness of the Appeal

Anderson filed this appeal on August 30, 2015, over two years after the district court sentenced him on June 10, 2013.  The government contends that this lengthy delay makes Anderson's appeal untimely.

Federal Rule of Appellate Procedure 4 states that in a criminal case a defendant's notice of appeal must be filed within 14 days of the entry of the judgment or order being appealed or the filing of the government's notice of

appeal, whichever is later. Fed. R. App. P. 4(b)(1). The district court may extend the time to file a notice of appeal upon a finding of "excusable neglect or good cause" but only "for a period not to exceed 30 days" from when the time to appeal would otherwise expire. Fed. R. App. P. 4(b)(4). Rule 4(b)'s deadline is not jurisdictional, but when the government properly makes a timeliness objection, we must apply Rule 4(b)'s time limits. United States v. Lopez, 562 F.3d 1309, 1313-14 (11th Cir. 2009).

Anderson's appeal came well after the district court entered its judgment against him. What's more, Anderson filed his appeal two years after a 30 day extension would have expired. Because Anderson failed to file his appeal within the time allowed by Rule 4(b), his appeal is untimely, and we must dismiss it. Lopez, 562 F.3d at 1313-14.

Anderson argues that the government forfeited any timeliness objection to his appeal because during the time period for filing an appeal the government was keeping him out of prison and working with him on efforts that he believed would lead to the government filing a motion for sentence reduction. Anderson cites no law in support of his position.

Between the entry of judgment and the filing of this notice of appeal, Anderson did file a motion to have the district court compel the government to move for a sentence reduction. Anderson, however, never appealed the district

court's denial of that motion, and Anderson still filed this appeal over a year after that denial.  Anderson has provided no explanation for why it took him so long to file an appeal after it became clear that the government would not file a sentence reduction motion and after he had reported to prison.  Thus, even if the government somehow dissuaded Anderson from filing an appeal while he was assisting with an investigation, we would still not conclude that the government forfeited its timeliness objection because over a year has passed since Anderson knew that the government would not move for a sentence reduction.  Importantly too, the government's decision whether to move for a sentence reduction has no bearing on whether Anderson had sufficient mental competency to enter a guilty plea.

## B.    Need for a Competency Hearing

Even if Anderson's appeal was timely, we would deny his claim—that the district court should have sua sponte ordered a competency hearing prior to accepting Anderson's guilty plea—on the merits.[2]

The Due Process Clause gives every defendant the right not to be tried or convicted while incompetent.  United States v. Wingo, 789 F.3d 1226, 1235 (11th Cir. 2015).  "Competence to proceed to trial or to enter a guilty plea requires the defendant to possess the capacity to understand the nature and object of the

---

[2]"This Court reviews for abuse of discretion a district court's decision not to order a competency hearing prior to trial."  United States v. Perkins, 787 F.3d 1329, 1339 (11th Cir. 2015).

proceedings against him, to consult with counsel, and to assist in preparing his defense." Id. at 1234–35 (citation omitted) (internal quotation marks omitted).

Under 18 U.S.C. § 4241, the district court has the obligation to sua sponte order a competency hearing if there is "reasonable cause" to believe that the defendant is not competent to enter a guilty plea. 18 U.S.C. § 4241(a); Wingo, 789 F.3d at 1236. Specifically, § 4241(a) states that the district court "shall" on its own motion order "a hearing to determine the mental competency" of a defendant, "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a) (emphasis added). Prior to such a competency hearing, the district court may order a psychiatric or psychological evaluation of the defendant. 18 U.S.C. § 4241(b).

This Court has identified three factors for determining whether the district court failed to hold a sua sponte competency hearing: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor before the court; and (3) prior medical opinion regarding the defendant's competence to stand trial or enter a guilty plea. See Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir. 1990). This analysis "focuses on what the trial court did in light of what it knew at the time of the trial or plea hearing." Id.

12

The district court did not abuse its discretion in (1) finding that Anderson was competent to enter a guilty plea and (2) not sua sponte ordering a competency hearing. All three Tiller factors support this conclusion, and no factor establishes reasonable cause to believe that Anderson was incompetent to enter a guilty plea.

First, Anderson cannot point to any evidence of irrational behavior. Anderson points to his schizophrenia, but there is no indication in the record that his schizophrenia is not reasonably controlled by his medication. Nor is there any evidence suggesting that his schizophrenia inhibited Anderson's ability either to assist his attorney or to understand the plea agreement, its consequences, and the charges against him. Indeed, at the plea hearing, Anderson discussed his schizophrenia diagnosis with the district court and assured the district court that neither his schizophrenia nor his medication prevented him from understanding the court proceeding. What is more, Anderson's attorney agreed that Anderson understood both what was going on with his plea agreement and the charges against him. Similarly, the PSI noted Anderson's mental health condition but provided no evidence of ongoing irrational behavior. The only evidence of irrational behavior mentioned in the PSI was that Anderson began hearing voices at age 20, which would have been in the early nineties, 20 years before the district court sentenced Anderson in this case and ten years before Anderson was

13

prescribed anti-psychotic medication.  No evidence suggested that Anderson continued hearing voices in 2013.

Second, Anderson behaved normally and properly during the entire plea hearing.  Anderson answered all of the district court's questions directly and succinctly.  Anderson did not act out or disrupt the proceedings in any way.  Indeed, the district court allowed Anderson to stay out on bond pending his sentencing hearing, and Anderson continued to cooperate with the government.

Third, there was no prior medical opinion stating that Anderson was incompetent to enter a guilty plea.  The probation office even had a doctor examine Anderson, and that doctor returned no such finding.  Instead, the doctor recommended that Anderson attend monthly psychiatric medication management therapy sessions.  Anderson complied with that recommendation and attended such a session prior to the plea hearing.  Based on these three factors, the district court did not abuse its discretion when it did not sua sponte order a competency hearing or evaluation of Anderson.

This Court's decision in United States v. Diaz, 630 F.3d 1314 (11th Cir. 2011), does not help Anderson.  In Diaz, this Court affirmed a district court's order allowing the government to involuntarily medicate defendant Michael Diaz in order to restore him to competency to stand trial.  Id. at 1335-36.  Diaz was psychotic and substantially impaired and had at various times been diagnosed with

14

undifferentiated schizophrenia, paranoid schizophrenia, and chronic paranoid schizophrenia.  Id. at 1317-29.  Diaz refused to cooperate with the medical staff, participate in therapy sessions, take medication, or undergo any other type of treatment.  Id. at 1320.  In stark contrast, Anderson has never been diagnosed as psychotic or substantially impaired; he cooperated with the probation office's doctor and attended a therapy session; and he voluntarily takes his anti-psychotic medication.

Diaz does not stand for the proposition that anyone with schizophrenia is incompetent to stand trial or enter a guilty plea.  To the contrary, this Court in Diaz concluded that, based on the medical evidence presented in that case, anti-psychotic medication could render a defendant with schizophrenia competent to stand trial or enter a guilty plea.  Id. at 1332-33.  Diaz thus does not support Anderson's claim.

### III.  CONCLUSION

Based on the foregoing reasons, we conclude that Anderson's appeal is untimely and that the district court properly accepted Anderson's guilty plea.  We therefore affirm Anderson's convictions.

**AFFIRMED.**

15